Your Honor, this is the third case of the morning, call 209-1015, Steve Sandholm v. Richard Kuecker, et al., on behalf of the Appellant, Mr. Steve Feuwinder, on behalf of the Appellant, or representing the Appellant, Mr. Michael P. Feuwinder. May it please the Court, Counsel. I am Steve Feuwinder. I represent the plaintiff appellant in this case, Steve Sandholm. Mr. Sandholm, after a 32-year-plus career as a teacher, coach, and athletic director, was subjected to slander and libel by the defendants in this case. And according to the trial court in its December 10, 2008, decision was barred from seeking redress for his injuries based on the Citizen Participation Act, and in particular, Section 15 of that act, claiming that that newly enacted statute. I think we're pretty familiar with the facts of this case, Senator. A lot of the legal issues in your time is limited, so I recommend that you discuss the facts as you discuss the law on the issue. Judge, before I do that, though, I want to point out to you there were a number of statements made outside of the petitioning activity, including after the petition was sent to the Dixon School Board, namely in June or May of 2008. One of the defendants, Mr. Schumacher, went to private citizens and repeated slanderous statements to them. They aren't participations in government in that action, so this statute, by the trial court, has been interpreted too broadly in terms of the claims we've made. Is that your last three comments of the complaint? Correct. We brought a slander per se, or defamation per se, an interference with expected continued employment claim and an invasion of privacy claim. If this statute is going to stand, no public employee in the state of Illinois, whether federal, state, county, township, or municipal, will ever have a recognized cause of action for intentional interference with employment. That is because, in this situation, if that employee, by virtue of libel or slanderous statements made by somebody against them, suffers an adverse employment action such as demotion or termination, that in turn is going to be, by the defendant's argument, participation in government, seeking redress, and therefore protected under Section 15 of the CPA. That denies persons who are employed by the public equal protection under the law, both under Illinois State Constitution, Article 1, Section 12, and under the 14th Amendment, because the government is the employer. The government, in this situation, makes the decision whether to terminate or demote based on the slanderous or libelous statements made by the persons who injured the public employee. That's unconstitutional. It creates a different class of persons in that situation. For example, defendants in this case, and the penalties, acknowledge that if, in this situation, Mr. Sanholm is working at a private school, and these statements were made, he has a right of action. But by virtue of the fact that he's a public employee, and the broad interpretation of the CPA, he has no cause of action. On that particular statement you just made, they don't disagree with you on that, do they? I agree. No, I said they don't disagree. They don't disagree, and that's why you've created a different class of citizen here. All right, so respond to their position. Well, their position— I mean, they're agreeing with you that that's the factual—I mean, let me use the word fact. That's the situation that public employees are going to find themselves in, or they do find themselves in. I don't think they dispute that, so why don't you address why they think that's still okay? You're making an equal protection argument. Now, it's one of the arguments that you're talking about. That's right. Correct. They believe that the statute as written overrides and grants an absolute protection to that petitioning activity. Well, I thought they believed that there was similarly situated people being treated the same. Public employees are similarly situated. So there's no equal protection problem because you can't distinguish between public employees and private employees. And so that's why what you make to sound like a very bad thing is not unconstitutional. Well, it doesn't give that person, the public employee, the right to redress in the courts as guaranteed. It doesn't. It's done in the Tort Immunity Act. What? I say the same thing is done in the Tort Immunity Act. Well, first of all— Public employees are protected. I understand, but under the Tort Immunity Act, it's the government that's protected. It's not the individuals who make the slanderous statements to government officials. The application of the Governmental Tort Immunity Act is inopposite in this case. We are not in a situation where we are suing a government employee in this case for acts that they did in the course of their employment at all. But isn't the argument that allowing lawsuits like this chills and diminishes one's ability to participate in government? Well, to the extent permitted by law, if you look at the statute, specifically Section 5 in its policy statement, it says that we are to strike a balance between the rights of citizens to sue or seek their rights to remedy versus the rights of citizens to participate fully in government as permitted by law. And nowhere in the Illinois State Constitution has it ever been permitted to go out and libel and slander and tortiously interfere with somebody's employment. There are 22 states that have this particular law. Understood. And a number of the states have case law that allows suits against government employees. In fact, one of the arguments with respect to this case, it's too broad, but you're not arguing that. Oh, yeah, I do. You will, in fact. I will. You're not arguing that. I have limited time, Justice. So if you see in my brief, I've argued that this is too broad of a statute because it violates your rights under Article 1, Section 2 of the Illinois Constitution where no person shall be deprived of life, liberty, or property without due process of law, nor be denied equal protections. Aren't there cases regarding interpretation of that section that holds it's a matter of philosophy, not a mandate of any kind? I don't agree with that statement of the law. I believe that the Illinois Constitution is the supreme law of the state. Oh, there is case law out there. You might want to read it relative to whether or not that justifies the cause of action when you rely on that particular statute or whether or not it's just a matter of the state philosophy relative to constitutional rights. I understand, but that's a right granted to every citizen in the state of Illinois. Further, everybody under Article 1, Section 12 shall find a certain remedy in the laws for all injuries and wrongs he received to his person, privacy, property, or reputation. The property interest is continued employment in the position you're in. That's well recognized under both Illinois and federal law as a right available to an employee, a public employee in this situation. He shall obtain justice by law freely, completely, and promptly. Then if you look at the freedom of speech section in the Constitution, all persons may speak, write, and publish freely being responsible for the abuse of that liberty. The CPA, as interpreted broadly by Judge Jeffries, takes away that clause from the freedom of speech in the Constitution. It says we're not going to be responsible for the abuse of that privilege or that right or that liberty. It says in this situation we have carte blanche to go out and make the most scurrious lies about somebody, whether orally, in print, on the internet, or over the airwaves, and not be held liable, which the United States Constitution has never said. It always has held a rein in on what persons can publish. There might be privileges available to that speaker based on the status of the citizen that they're defaming, but there's no absolute right to defame. There's no absolute right to interfere with somebody's continued employment. Where would you propose the line be drawn? The conduct at issue here, you say, is beyond the pale, but when it comes to the goal of the act to encourage and protect citizens petitioning their government, where would you draw the line? Well, I would draw the line at that you can't go in when petitioning government and make falsehoods about the person that you're complaining about, if that's the petitioning government. Well, what about if somebody's petitioning, you know, for a law, and they say, we need this law because X, Y, and Z. They're going directly to the legislature, the General Assembly. Well, petitioning for a law, they go before the General Assembly and testify to the need for a revision in our revised statutes. Can they be sued for that? No. That's what I'm talking about. Where would you draw the line? You would not allow somebody to be sued for their testimony before a legislative committee, would you? Absolutely not. All right, where would you draw the line? I'd draw the line when they start going to the media and playing it in the media, Your Honor. When they go to the media and say, this is what I just testified to before the state legislative committee. But if it's a falsehood about somebody, that's not protected under the law. You can testify. No, that's what I'm asking you. Slow down. Right. I'm saying that they get up and they make a false statement. We're assuming a false statement to the General Assembly, to them petitioning their government very directly. That's not going to be actionable if they're sitting in a hearing. Is that right? Even if it's false? I believe that's true. Why would you say that that's permissible? Because it's already been recognized by the courts in this state that any judicial or quasi-judicial proceeding in which somebody gives testimony, they are immune from the liable or slander suit if that suit is based on that conduct, because that public policy overrides to bring people to court to testify to the truth. I understand. That also applies, I think, to a legislative hearing. I'm not disputing that, Justice. All right. So we're past the big hurdle. This kind of thing is permissible under the law. Despite all the parts of the Constitution you just read. And it's an individual person, not the government, that's making these statements. So the big hurdle's over. Now it's a sliding scale. Where do you draw the line? At the point where they start taking it outside of the legislative process. At the time they start taking it outside of the judicial process. There was no need for any of these defendants in this case to create a website called savedicksinsports.com, republish all this, and then ask for the continued removal of the defendant, or the plaintiff in this case, from his position. What do you mean there was no need to do that? Because they did it already. They petitioned government. Government turned them down. They had a March 19, 2008 hearing. But was the purpose the government turned them down? So the purpose was to go public to get more pressure and support to put more pressure on the government, right? But if you slander somebody and libel somebody in doing so, that's not protected under Illinois law, and that's not protected under U.S. Constitution. It is protected under Illinois law. Wait a minute. You just agreed with me it was. They can get in and slander and libel somebody in a court or in a legislative hearing. They can do that. Correct. Okay. So then you're saying, I'm trying to understand. So they can do it before the, for example, in Springfield, before a committee. They can do it there. If they step out on the Capitol steps and repeat what they said, then they can be sued. I'm trying to find out where the line is drawn. Yes. That's where the line is drawn here. And they go up and they make a factually true statement. This is what I just said in there. But the line is not drawn there. It's the statute. Is that correct? Correct. And the statute doesn't protect out of court, out of judicial, semi-judicial areas, out of the legislative process. The statute just states you're free to petition government. Correct. So therefore, your position is you believe the statute is broad. It's over-broad because if you're going to extend it to situations like this, where when disgruntled defendants don't get what they want, they can go and repeat falsehoods across America about my client, that's unconstitutional. Well, their goal is to get favorable government outcomes, correct, by continuing to go out into the media, et cetera. Correct. I understand that's their goal, but that doesn't give them the absolute right to slander somebody, to libel somebody, and to maliciously try to get them out of their protected property interest job in doing so. If you look at our complaint in this case, we did not sue them for the petitioning activity to the Dixon School Board. We sued these individuals on the basis of their outside activities. We had no complaint that they sought redress from the Dixon School Board at a hearing in March of 2009. But when you take that beyond that and you start talking to people who aren't government, when you start saying to everyone across the country in the Internet that Mr. Sandholm abuses children, which is slander per se, that isn't petitioning government. That's just being a committee to thwart in that situation. Your time is up. Thank you. Thank you. Before you get started, let me ask you, let's just start with this statute. Do you agree, I would assume based on your briefs, that you disagree that this statute is overly broad? I mean, if you take a look at this statute versus the statutes of the other states that have implemented the SLAPP Act, isn't this very broad? Your Honor, I agree that it's broader than some. And may it please the Court, I'm Michael Lieber. I'm attorney for NRG Media and Al Neckram on behalf of the Appellees and Cross Appellants. The Citizen Participation Act is written broadly, but it's written broadly to achieve an important goal that the legislature focused on, which was preventing Illinois citizens when they are participating in government affairs, petitioning, association, speech, things that are extraordinarily important in a democratic republic, that they be protected from what are called SLAPP suits, strategic lawsuits. But can't they achieve that goal by tightening up this act a little bit more? Maybe, for instance, like California's or another state that's a little tighter than this? I mean, your opponent is arguing anybody can go out there and say anything they want, as long as it's achieving a government, their goal in the process of a government goal, if you will. Anybody can go out there and say anything they want, and they're protected. The legislature could tighten it up some, but it's not necessary to do so in this case. Certainly there are states, New Mexico, Hawaii, where they state quite clearly in their anti-SLAPP statutes, we are limiting the protection to people who are petitioning or who are participating within the four walls of a government meeting room. And that's what Mr. Samholm argues today that the CPA should be interpreted to mean. The CPA is, and your Honor is correct, it is broader than that. It goes beyond that, and it goes beyond that because there are already Illinois common law protections, as Justice O'Malley pointed out, protecting people who say what they say within a government meeting, at a court, at a legislative proceeding. But there is no need to reach the question at this point here as to whether the CPA may, in general, be overly broad. Because here we have a situation addressing exactly what the legislature wanted to tackle when you enacted the CPA. We have a situation where local townspeople were concerned about the appropriate behavior of a high school basketball coach and athletics director. They met, they drafted a petition, they got it signed, they engaged in Internet activity, they went on the airwaves of my client's radio station to discuss the first school board meeting where they presented the petition. Other than the facts, let me get to a couple of legal questions. Do you feel that Section 15 is ambiguous or unambiguous? Your Honor, I believe it is unambiguous. I believe it's very straightforward. It states that if somebody is participating in government affairs, if they are engaged in speech, association, petition, they should be protected. And the CPA creates a very straightforward two-part test. It adopts the North Pennington test. It says two questions. One was the citizen's participation. Stop right there. By adopting the North Pennington test, is that acquiescing in the fact that the statute is ambiguous? I don't believe so because the North Pennington test creates a straightforward test for courts to apply depending on the procedural posture of the case before it. But it's outside of the independent language of the statute. Well, Your Honor, if you consider that particular act, well, if you look at the legislative history and if you look at the word genuine within Section 15, Representative Franks in the very limited four or five pages of legislative history on this stated point blank that, and I can read you the language, he stated, and what this bill does is it – Your Honor, let me stop you right there. As soon as you get into legislative debates, are you conceding that the statute is ambiguous? Well, I don't believe I am because – Because otherwise you don't have to get into it. If you take the position it's unambiguous, you don't have to get into legislative debates. You don't have to get into North Pennington or anything like that. Just look at the language. In the context of the statute, it either is or isn't. And I think if you look at the language of the statute, it states was this conduct genuinely aimed for procuring favorable government action? Genuinely aimed means were the petitioners, were the citizens' actions genuinely aimed at getting some kind of government result here? Even if it's genuinely aimed at getting the government result, one can slander in order to get that result that they want to get? Your Honor – Based upon the way the statute's written, they can't. They can't. They can't. This provides an additional immunity for defamation-type claims. Illinois has several absolute immunities as it stands prior to the CPA providing protection from people who engage in what are allegedly defamatory statements. Justice O'Malley pointed out the public meetings rule. Statements made in court, statements made in legislative proceedings. There are other quasi-judicial bodies where this absolute immunity exists. Attorney-client relationships. Statements made to law enforcement. And there are many qualified. Could it be argued, though, that here their actions were not, quote-unquote, generally aimed at the government getting a favorable government outcome, but based upon some of the statements and based upon some of their actions that maybe they weren't generally aimed at the government outcome but more generally aimed at destroying this guy? Would that be an issue that would not be one to be dismissed under the Act? Your Honor, I don't believe that one could take the position that that was their aim. Because this was a motion to dismiss, a Rule 2615 motion, the lower court – Under 2615 and under the Act. Under 2615 and the protections provided by the Citizen Participation Act, the lower court did what the lower court was supposed to do. At that point, did the court make a ruling under the Act or under 2615 or both? Essentially both, Your Honor. And frankly, because we're in somewhat uncharted territory, I think the answer is a little unclear. But what the court did is it applied the correct standard. It said this is a motion to dismiss under 2615. I will take as true the allegations of the complaint. The allegations of the complaint allege, going back to that two-part test, number one, were the activities of the citizens. Was this involving participation in government, speech, petition? The answer, based on the plain allegations of Mr. Samholm's complaint, the answer was yes. Then the judge turned to the second part of the test. Was this action, were these actions by the citizens genuinely aimed at procuring some kind of government result? And if you look at paragraph 13 of the plaintiff's complaint, he states that the appellees, quote, individually and as a group, began a campaign to have Steve removed as basketball coach and as an athletic director. Therefore, he has, therefore the trial court, taking as true the allegations of the complaint, looked at the two-part test that the CPA provides for and answered affirmatively to both. And that essentially ends the matter. The court looked at the importance of the SLAPP statutes. And, Justice Bowman, you had mentioned that when this was enacted, there were 22 states. It's now up to 26 states that have enacted anti-SLAPP statutes. So it has been growing every year since the first one was enacted in 1992. These statutes have been enacted to protect very important rights. All right. Discuss the broadness of this statute again relative to Terry Fugnelli's statement. Where do you draw the line? Well, certainly the Citizen Participation Act is much broader than what Mr. Samholm would suggest. Mr. Samholm in his briefing here today essentially suggests it's merely a codification of the government meetings immunity provisions that are given to people who have allegedly defamed others. It is much broader than that. And we know that because we can look at other states' statutes, states like New Mexico, Hawaii. And as lower courts who have already ruled here in Illinois have stated, for example, the Shidler Court here in the Second District stated, if the legislature wanted to put language into the CPA that said it only applies to people who are making statements at government meetings, they could have done so. Now, that wouldn't make a whole lot of sense, though, because if the intent is to protect people who are petitioning the government, then we have to understand how the real world of petitioning works. It might be one neighbor going to another. The prototypical slap suit is when a developer wants to build a high-rise, the neighbors don't want it, and they go to the zoning board. But before they go to the zoning board, they have to meet. They have to talk. They have to gather numbers. Under Mr. Samholm's reading of the CPA, they could still be sued if they met, if they even talked about this. Any speech that they make either before or after, outside of those four walls of that public meeting room, would be actionable. What if the basketball coach is suspected of committing sexual offenses? And the general, it's a suspect, and there might be a few facts that support the suspicion. And then there's this petition circulated by a number of people, and make those sexual allegations based on somewhat loose facts. And then they go before the school board and the ledge staff, the basketball coach committed sexual acts, and we want him fired. What position do you have on that particular scenario, where the acts of the parties in going before a government board are based on extremely flimsy evidence and go to a per se sexual type of defamation? I think you would use the two-part test again. Number one, was this in furtherance of government action, of petitioning? And number two, was it a sham? If it was, if there was a good faith basis to believe this, and the people really wanted to get some relief and have the coach fired, well, then they can approach the school board. And the answer isn't for that coach to sue them. The answer is for the coach to respond. As the court in the Bowman case, or the Tillman case, the Seventh Circuit stated, the First Amendment prohibits efforts to ensure laboratory conditions in politics. Speech, rather than damages, is the right response to distorted presentations and overblown rhetoric. A campaign to influence the Board of Education is classical political speech. It is direct involvement in governance, and only the most extraordinary showing would permit an award of damages on its account. I did want to take just a moment to address the cross-appellants, a request for the full measure of our attorney's fees. And I understand, based on the clerk, that we'll get five minutes in rebuttal to also further address that. Hold on to that. What you just mentioned, before you go there, quickly tell me again, or expand briefly on the notion you just said about, there'd be some bad faith review here. Was that brought in bad faith? How does that work out? I mean, so in this particular case, we have before us, is the trial court supposed to have some kind of a, make a determination that these things are not brought in bad faith? I didn't think that was really a... Your Honor, it is not. What the trial court does is the trial court takes the situation based on the political, based on the posture that the case has brought, whether it's a 2-6-15, 2-6-19 motion for summary judgment, and the court answers those two questions. If it's a summary judgment motion, the court looks at the material undisputed facts. Well, when does this good faith thing get determined? You just mentioned that. I think I'm quoting you correctly here. You're not quoting me. You said, as long as it's not brought in bad faith. So when is there a determination of whether or not, in our particular case here, what these people said about this man was done in good faith or bad faith? When is that determined? Well, for example, if Mr. Sanholm's complaint alleged that they were engaged in political speech and petitioning and otherwise seeking the assistance of the government, but it was done as a sham. It was, they didn't really want the relief that they claimed they were seeking to get him fired. They simply didn't like the guy, and they wanted to defame the heck out of him. Then, if Mr. Sanholm had alleged that in his complaint, the court, taking those allegations as true, would have said the CPA provides no defense. Here, he didn't make those allegations. Or, if he made those allegations and there was limited discovery, as the CPA calls for on that issue, and his claims were borne out, we brought a summary judgment motion. Once again, the trial court would say the genuine, undisputed facts show that you did bring this as a sham. You simply wanted to defame him. Okay, you've answered my question. You get to where you were going with it. Thank you. My question is, with respect to Section 15, you have language regardless of intent or purpose, except when not genuinely aimed at procuring a favorable government outcome. How do you balance those two things? As I said, people have very few factual basis, reliable facts, to accuse the basketball coach of a sexual offense by a petition with the board based on those very thin, so-called fairly reliable facts, or you could label them unreliable facts. How do you figure out whether that's intent or genuine endeavors to seek government help? Well, I think in that case, Your Honor, what you would do is, if you're the coach who's facing these allegations and you want to bring a complaint against these people because you feel that it's untrue and that you've been defamed, you file a complaint that you say on information belief these folks had no basis to make those allegations. There's no truth to them. They were brought as a sham. They weren't brought because the people wanted to get me fired. They were brought because they simply wanted to harm me. And then under the CPA, you can take limited discovery on that very issue, whether the intent of the people who were petitioning the government or who were engaging in some kind of government-related activity were doing it for genuine purposes. The CPA allows that discovery. So even if the citizens move to dismiss, the coach could approach the judge and say, we'd like some limited discovery on that to get at the nub of that issue. Here, Mr. Sandholm did not seek nor was granted leave to take such discovery. And as we said, the facts alleged in his complaint, he essentially alleges himself out of his defamation and false light and other claims based on the protections of the CPA. I will take a moment in my rebuttal to address our attorney's fees issues. And unless your honors have any other questions, that's all I have. Any other questions? Do you think that it's your position that his lawsuit, the lawsuit that he filed, was trying to get them to shut up, trying to chill their ability to speak? So under the example that you just gave about the coach with the sexual abuse, under this particular statute, isn't it tough to overcome the sham, if you will, exception? Because anybody can say, hey, we're doing it for government, to reach this government outcome, and he's just trying to chill our speech. The way this statute is written, isn't it very difficult to overcome as a litigant? Is the party bringing the lawsuit, for example, the coach? I just want to make sure I understand your question. Yes, the party is the accused, if you will, or the party bringing the lawsuit, the plaintiff in this case. It certainly is not as easy as it was before the CPA came into existence, but that's because the legislature determined that people should have the right to speak about matters of public concern, and they should only not have that protection if they are doing it for sham purposes, if they're simply trying to defame somebody and they're using the cover of some kind of legislative proceeding, some kind of government action to take advantage of the CPA's protections. So there's no question that the CPA expands citizens' rights to participate in government, but the Illinois legislature decided that in a democratic republic, there are few, if anything, more sacrosanct than allowing the citizenry to participate in government affairs. Speaking about participation, the Attorney General declined to participate in this case, is that correct? That's my understanding. Okay, thank you. Your Honors, in addressing the Norr-Pennington Doctrine, if you look at the Myers v. Levy case that was decided in this district in 2004, this Court held that the Norr-Pennington Doctrine does not apply in this situation. It relied on the U.S. Supreme Court case of McDonnell v. Smith, in which the United States Supreme Court held in a defamation action, not in an antitrust case, which is the Norr-Pennington case, it held that the right to petition government is guaranteed under the U.S. Constitution. The right to commit libel with impunity is not. In that case, a football coach had first had a petition sent to the superintendent by private citizens, slandering him, and then spread. And this Court found that the Norr-Pennington Doctrine in defamation actions in this district doesn't apply as a matter of law, relying on the McDonnell v. Smith case from 1985. There is no absolute immunity, as the defendants argue here. There has to be a balancing test in this case. The right of a private citizen who has been defamed, libeled, had his privacy invaded, and had his job intentionally interfered with, has the right to redress under the Illinois and United States Constitution. This statute, if it's interpreted as absolute liability or absolute immunity, takes away that right from every public employee in the state of Illinois. Completely. Further, they argue that the Norr-Pennington Doctrine two-part test is clear from the language in Section 15. It isn't in that. They're bootstrapping that in here at this time. They're going beyond the clear language of the statute to make a test that applied in an antitrust case apply to a defamation action and an intentional interference with employment action. This Court's already found in 2004 that that doesn't apply, and now we're getting the opportunity to visit that again based on the statute that is written here, which never mentions that two-part test. Third, as to the argument that we are chilling by filing this lawsuit, no, we're seeking redress for the damages sustained by the citizen as the result of illegal conduct. Isn't the focal point, though, on the defendants in this case relative to the statute what their focus was in approaching government, not what the intent of the defendant was in filing the lawsuit? I understood that. I understand, but then you're getting, you're putting the scale all the way down on the defendant's side and ignoring Section 5's requirement of balancing test. Isn't it clear that the statute does pretty much put the scale all the way down with respect on the defendant's side? Absolutely, and that's why it's unconstitutional. You have the defendant. The defendant has the burden of showing by clear and convincing evidence that it wasn't a genuine effort. You mean the plaintiff does in that situation. Right. The plaintiff. Right, correct. And we are denied discovery in this case. We ask for, we send inrogatories and request production of documents at the initial offset of this case, and Judge Jeffrey has denied our request to pursue discovery in this case. Counsel, let me go back to an example that your opponent gave here. He called it a more classic example. Somebody wants to develop, build a high-rise in a neighborhood. The neighbors don't want it. The neighbors should go to the Zoning Board of Appeals and at a formal hearing of the Zoning Board, whatever they say, there's absolute immunity. Is that pretty much correct? That is correct. Correct. Now, if those neighbors go to their neighbors and say the same thing and say join me next Tuesday at the Zoning Board of Appeals, join me while I say these things and you say them too, that would be actionable under your view in a way that's hard to be interpreted? If it's false. If the statements made are false. Okay, I understand that. So they make the false statements at the hearing, but if they make the false statements to their neighbors to encourage their neighbors to join them in opposing the building, that's actionable here. Yes. Let's take a different example here. Let's say you're running for retention and you get retained. And I, because I don't like you for personal reasons and unpersonal reasons or whatever, take out a billboard on I-355 saying you should never retain Justice O'Malley again because he's a child molester. I'm speaking to people. I'm sending my message out. I'm still petitioning government that way. I'm immune under the statute then. That's not what, that's ludicrous. That's a ludicrous interpretation of this law, but that's what they want here. They want any speech. Is there a, you made this billboard come out after the retention. Is that purposely the way you want it to be? Sure. So the billboard comes out before the retention election? No, it's not privileged. That's still slander. Well, I was wondering why you decided to make the objection. Because I, because I. He wanted to see you retained. I want to see you retained. I was working on the next retention. You might have had that opportunity. Thank you. Oh, just one brief point. If we were to interpret the statute strictly, which you're required to do in a fee-shifting statute, they didn't get their ruling timely in this. They didn't get it within 90 days of the filing of the petition, so they were entitled to no fees at all. This will be limited to fees. Correct, Your Honor. Let me address that last point first. The notion that we are not entitled to the full measure of our fees because the judge in the lower court did not rule on our motion to dismiss based on CPA grounds within 90 days. We filed our motion in early July of 2008. It was set for oral argument on, I believe, August 26, 2008. On that day, right before oral argument, plaintiff's counsel gave us a supplementary brief challenging the constitutionality of the CPA. So many of the arguments and issues that we've discussed here were included in that. There was additional briefing. There was an additional oral argument, and therefore the judge ruled after the 90-day time frame had told. The 90-day time frame is in place to protect people who face slap suits. The CPA designed the 90-day time frame to allow people facing these improper suits that seek to silence their participation in government to have them quickly disposed. It was not put in place, the 90-day time frame, to protect the person who is bringing the slap suit in the first place. And if we go with the interpretation that Mr. Samholm suggests, that as long as the judge fails to rule within 90 days, no matter what the reason, the person seeking the protection of the CPA is out of luck either on their underlying CPA claim or on their fees claim, well then what we do is we incentivize delay on the part of the plaintiff who's brought that slap suit. They will not show up for hearings. They'll file additional motions. They'll do anything they can to get past that 90-day time frame, and there's nothing in the CPA that suggests that that's the purpose of the statute. With respect to fees, I think the issue is if you could kind of narrow it on incurred in connection with the motion. And Your Honor, you certainly have honed in on the narrow issue that is at stake here. The statute states that defendants, appellees in our case, who are successful in having a slap suit disposed of based on the CPA, they are entitled to their full measure of damages in connection with the motion to dispose of the CPA. So then the question becomes what does in connection with mean? There is a little bit of ambiguity there because it just depends on how we define in connection with. At that point, I think it is appropriate to turn to the legislative history. Again, the legislative history is very brief. I've got a copy for Your Honors if you'd like it. It's about four pages. And here is the only language that the legislative history includes discussing the attorney's fees. Representative Frank stated, quote, it's an expedited hearing. They have to do within 90 days, and it also shifts the burden on the plaintiff. And should the plaintiff lose, they have to pay the defendant's attorney's fees. So Representative Franks, neither Representative Franks nor any of the other legislators, narrowed the entitlement to attorney's fees in the manner that the lower court did here. The lower court here said the only thing you don't get for case intake, responding to discovery, and incidentally the discovery that was issued in this case was general discovery before the motion to dismiss pursuant to the CPA was filed. It wasn't specific discovery related to the CPA, genuine test. But we didn't get any of those. We got a very narrow sliver of our fees only relating to the research and drafting and arguing of the CPA portion of the motion to dismiss. Not all costs of litigation. Not all costs of litigation, not all costs of the motion to dismiss itself, which we filed on numerous grounds. And the judge in the lower court did not deny those other grounds. He simply said he didn't need to get to those other grounds. Of course, we had to file those to protect ourselves on a motion to dismiss and protect those claims. And we believe that we should be entitled to that full measure of damages rather than just the narrow sliver, because that will help effectuate the whole point of the CPA, which is to make people immune from these slap suits and immune from the harmful conduct, the harmful consequences, the time, the harassment, and in many cases, most importantly, the financial burden that a slap suit places on a citizen who is simply trying to engage in government participation. Thank you. Thank you. In view of the fact that there was argument regarding the attorney fees, the plaintiff will have an additional three minutes to answer that argument, if you wish. All right. Thank you.